# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBBIE L. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-317-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Debbie L. Williams requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on May 19, 1960, and was forty-seven years old at the time of the second administrative hearing. (Tr. 450). She has a seventh grade education and past relevant work as a peanut sorter and machine tender. (Tr. 316). The claimant alleges that she has been unable to work since April 17, 2000 because of chronic obstructive pulmonary disease (COPD), back problems, and stomach problems (Tr. 52).

**Procedural History**

The claimant applied on November 13, 2003 for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Lance K. Hiltbrand determined the claimant was not disabled in a written opinion dated August 9, 2005. (Tr. 12-22). Following that decision and after the Appeals Council decided not to review the ALJ's decision, the Honorable James H. Payne of the Eastern District of Oklahoma reversed the ALJ's opinion and remanded to the ALJ with instructions to properly analyze the treating physician opinions of Dr. Wellie Adlaon, M.D. in accordance with 20 C.F.R. § 416.927. (Tr. 335). Following the remand by this Court, ALJ Tela L. Gatewood determined that the claimant was not disabled in a written decision dated April 15, 2010. (Tr. 308-19). The Appeals

Council denied review of this opinion, so the ALJ's April 15, 2010 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation.[2] The ALJ determined that the claimant's severe impairments consisted of COPD with episodes of bronchitis, a history of back surgery, pain in the left hip and both knees, and hypertension (Tr. 317). She further found that claimant had the RFC to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 30 minutes at a time and a total of four hours in an eight-hour workday, frequently kneel, and occasionally stoop, crouch, and climb ramps or stairs. (Tr. 318). Further the ALJ prohibited the claimant from the following: i) using foot controls; ii) crawling or climbing ladders, ropes or scaffolds; and iii) working in environments with concentrated exposure to dust, fumes, smoke, or chemicals. (Tr. 318). The ALJ found that the claimant was capable of performing her past relevant work as a peanut sorter, so she was not disabled. (Tr. 318).

## Review

The claimant contends that the ALJ erred by: i) failing to properly evaluate the medical evidence of record, including the treating physician opinion of Dr. Wellie Adlaon, M.D.; ii) failing to find claimant's depression a severe impairment at step two;

---

[2] The ALJ also made an alternative finding at step five that even if claimant was unable to perform her past relevant work, she was nonetheless capable of performing other work in the national economy, *i. e.*, machine tender, charger II, and surveillance systems monitor. (Tr. 317).

-4-

and iii) failing to perform a proper step four analysis in the context of claimant's ability to perform her past relevant work. The undersigned finds that the ALJ did fail to properly analyze the treating physician opinion of Dr. Adlaon.

The claimant's treating physician Dr. Wellie Adlaon, M.D. completed three separate opinions, all entitled Medical Source Statements – Physical. His first opinion was dated April 4, 2004, and found that claimant was limited in the following ways: i) she could both frequently and occasionally lift and/or carry up to five pounds; ii) stand and/or walk for two hours in an eight-hour workday; iii) sit for less than one hour in an eight-hour workday; and iv) in her ability to push and/or pull because of "the pressure it exerts on the lower back, causing extreme muscle spasm and pain." (Tr. 235). Dr. Adlaon also wrote that claimant would be required to lie down to manage pain during a normal workday. (Tr. 235). Further, he opined that claimant should never climb, balance, stoop, kneel, crouch, crawl, or reach and only occasionally handle. (Tr. 235).

The next opinion from Dr. Adlaon is dated April 27, 2005 and apparently covers the time period from April 2005 through December 2005. (Tr. 232-33). In that opinion, Dr. Adlaon states that claimant is capable of both frequently and occasionally lifting and/or carrying up to five pounds, standing and/or walking less than one hour in an eight-hour workday, and sitting less than one hour in an eight-hour workday. (Tr. 232). Further, Dr. Adlaon found that claimant would be limited in her ability to push and/or pull because of her lower back pain and opined that she would be required to lie down during a normal workday to manage pain. (Tr. 233). Finally, Dr. Adlaon wrote that

claimant would be "unable to tolerate dust or fumes causing shortness of breath" and cited the claimant's COPD as the cause. (Tr. 235).

The final opinion is dated February 14, 2008 and limits claimant in the following ways: i) frequently lifting and carrying five pounds and occasionally lifting and/or carrying 10 pounds; ii) standing and/or walking less than one hour in an eight-hour workday; iii) sitting less than one hour in an eight-hour workday; iv) never climbing, balancing, or crawling; and iv) only occasionally stooping, kneeling, crouching, reaching, and handling. (Tr. 392). Further, Dr. Adlaon opined that claimant's COPD would prevent claimant from working in dusty or humid conditions. (Tr. 392). Finally, Dr. Adlaon opined that she would be required to lie down during a normal workday to manage pain. Dr. Adlaon also found that claimant could never climb, balance, stoop, crouch, or crawl and only occasionally kneel, reach, and handle. (Tr. 233).

Medical opinions from a treating physician are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the records." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotation marks omitted]. When a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be

weighed using all of the factors provided in [§ 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. And if the ALJ decides to reject a treating physician's opinions entirely, he must "give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotations omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

The ALJ found that Dr. Adlaon's opinions had "reduced credibility" for the following reasons: 1) the timing of the opinions, *i. e.*, that they "shortly followed the scheduling letter" for various hearings; 2) inconsistencies between the opinions and the medical evidence of record, specifically citing the consultative examiner's findings; and 3) her daily activities were not consistent with Dr. Adlaon's findings. The ALJ's analysis of Dr. Adlaon's opinions is not legally sufficient for several reasons.

First, it appears that the ALJ's questioning of the timing of Dr. Adlaon's opinions infers that Dr. Adlaon's opinions were a mere convenience or favor to the claimant,

which is nothing more than an improper speculative conclusion on the part of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original].

Second, the ALJ noted that the limitations noted in Dr. Adlaon's opinions were "not consistent with the progress notes or those statements of other doctors" and specifically cited the "normal" findings of the consultative examiner. (Tr. 316). First, the testing performed by the consultative examiner revealed that claimant's range of motion in her back was significantly decreased. (Tr. 120). Second, and more importantly, the ALJ failed to explain why the findings of the consultative examiner deserved greater weight than those of the treating physician Dr. Adlaon. *Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (noting that the ALJ did not

adequately explain why the opinion of a non-examining physician deserved greater weight than the opinion of an examining physician) [unpublished opinion].

Finally, the ALJ wrote that it did not "appear the Dr. Adlaon knew that the claimant was taking care of a grandchild much of the time and was helping her mother." (Tr. 316). This is merely speculation as to the knowledge Dr. Adlaon had about his patient, and it is not a permissible reason for rejecting his opinion. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [quotation omitted] [emphasis in original]. If the ALJ had questions about Dr. Adlaon's opinion, he should have recontacted Dr. Adlaon to clear up any questions she apparently had about the veracity of Dr. Adlaon's opinion. *See, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[T]he ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error. At the least, if the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to obtain additional information from Dr. Luc before rejecting the report outright.").

Because the ALJ failed to properly analyze the treating physician opinion of Dr. Wellie Adlaon, the decision of the Commissioner is REVERSED and the case REMANDED to the ALJ for further analysis as outlined above.

**Conclusion**

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 29th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma